The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: October 23, 2024

**No. A-1-CA-41416**

**RYAN STODGELL and KATHARINE STODGELL,**

Plaintiffs-Appellants,

v.

**LINDA OAK WEISSMAN and BLACK OAK LLC,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Emilio Chavez, District Court Judge**

Robert Richards
Santa Fe, NM

for Appellants

The Simons Firm, LLP
Frieda Scott Simons
Santa Fe, NM

for Appellees

**OPINION**

**HANISEE, Judge.**

{1}     This case arises from a dispute over damage deposit funds between tenants Ryan and Katharine Stodgell (Tenants), their former landlord, Linda Oak Weissman (Landlord), and the company Landlord owned that held the subject property, Black Oak, LLC. We write formally to address whether a landlord who timely complies with the requirements of NMSA 1978, Section 47-8-18 (1989) (governing damage deposits) may subsequently file suit for harms to the rented property not previously identified and deducted from the damage deposit within the statute's thirty-day window. We must also address whether the district court correctly determined Landlord to be the "prevailing party" in the underlying lawsuit as contemplated by NMSA 1978, Section 47-8-48(A) (1995) such that she may be awarded attorney fees and court costs. The district court concluded that Landlord timely complied with Section 47-8-18 and is not prohibited from filing a subsequent action for previously unidentified damages to the rental property. It further found Landlord to be the prevailing party. We affirm.

**BACKGROUND**

{2}     On March 8, 2021, Tenants signed a lease agreement with Landlord to rent the subject property for a term of sixteen months. Rent was set at $1,600 per month and the total initial deposit for future damages was $2,600. The parties subsequently

agreed to end the lease several months early, and Tenants departed the residence on June 30, 2022. On July 9, 2022, Landlord sent Tenants an accounting that itemized her deductions from their damage deposit, which totaled $832.62, and a check for the remaining balance, $1,776.38.[1] A final note on the accounting provided by Landlord stated, "By cashing [the] check . . . you acknowledge all monies due have been satisfied." Tenants, however, disputed $672.92 of the deductions, leaving only $159.70 undisputed.[2] They feared, based on the statement in the accounting sheet, that if they cashed the check with their refund, they would lose any right to dispute the deducted amount. Landlord notified Tenants in writing that she would issue a "stop payment" on the check containing their refund on August 1, 2022, and after such date passed, did so. Tenants then filed the underlying action in magistrate court contesting the amount Landlord deducted from their damage deposit.

---

[1]We note that there appears to be a mathematical error in the accounting in which Landlord states the total damages to the property amount to $832.62, but then deducts $823.62 from Tenants' damage deposit, resulting in the $1,776.38 refund. Such an error is not discussed by the parties on appeal and only prejudices Landlord, who apparently deducted nine dollars less than she intended from Tenants' deposit. Because Landlord does not address this discrepancy on appeal, and because it is clear from the record that Tenants did not dispute $159.70 of the deductions, we do not discuss it further. For clarity, however, and because this discrepancy affects other figures pertinent to this appeal, such as whether Tenants disputed $663.92 or $672.92 of itemized deductions from their deposit, we note that we rely on the $832.62 and $672.92 figures throughout this opinion.

[2]*See supra* note 1, for explanation regarding the mathematical discrepancy relating to the undisputed amount of Landlord's deductions.

{3}     In response, Landlord filed a cross-claim stating that she was entitled to additional damages beyond those itemized in the deductions. Tenants repeatedly argued to the district court, as they do now on appeal, that Section 47-8-18(C), (D) requires a landlord to "provide a tenant with an itemized listing of *all* damages to property within thirty days of the date the lease ends," and any claim for damages not then identified is forfeited. The district court rejected this argument and concluded that the plain meaning of Section 47-8-18 only prohibits a landlord from filing an independent claim for damages if the landlord failed to comply with the statute's terms regarding return of the damage deposit, which the district court ruled was not the case here. The case went to trial, and Tenants were found liable to Landlord for $2,249.07 in property damage.[3] However, because Tenants never cashed Landlord's check refunding a portion of their damage deposit, the district court deducted this amount from the damage deposit, $2,600, and ordered Landlord to refund Tenants the remaining balance of their deposit, $350.93.

{4}     The district court concluded that Landlord was the prevailing party in the case, stating that Tenants sought, unsuccessfully, the return of their entire deposit, minus $159.70 in undisputed damages. As such, the district court determined that Landlord was entitled to reasonable attorney fees and court costs. *See* § 47-8-48(A) (stating

---

[3]This figure includes $2,325 in damages to the property less $75.93 in interest that was previously due to Tenants.

3

that "the prevailing party shall be entitled to reasonable attorney[] fees and court costs"); Rule 1-054(D)(1) NMRA (same). Landlord then moved for an award of such attorney fees and court costs, which, despite the initial dispute in this case pertaining to less than $700, were determined by the district court to be $26,266.55. The district court awarded Landlord the requested costs and fees and set Tenants' supersedeas bond at $39,399.83, which it reasoned was "1.5 times the amount of the total judgment including costs and attorney fees" and was "sufficient to cover the amount of the judgment, costs, and interest during the pendency of appeal."

{5}     On appeal, Tenants present the same argument they did before the district court: Section 47-8-18(D) requires a landlord to identify all damages to the rented property within thirty days and any claim for damages not then identified is forfeited. Tenants have further filed a motion with this Court, contending that they are the prevailing party because, according to them, their $350.93 award is 51 percent of the $672.92 they originally disputed whereas Landlord sought over $10,000 in damages at trial, but only obtained an award for $2,249.07. We address each argument in turn.

**DISCUSSION**

**I.      Section 47-8-18(C), (D)**

{6}     Tenants' argument that Section 47-8-18 requires identification of *all* damages to a rental property by a landlord within thirty days presents an issue of statutory interpretation we review de novo. *See Roser v. Hufstedler*, 2023-NMCA-040, ¶ 6,

531 P.3d 615. "The first and most obvious guide to statutory interpretation is the wording of the statutes themselves." *Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (internal quotation marks and citation omitted). Appellate courts have consistently adhered to this principle "through application of the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Id.* (alteration, internal quotation marks, and citation omitted).

{7}     We, thus, begin with the plain language of Section 47-8-18(C), (D), which states:

>       C.     Upon termination of the residency, property or money held by the owner as deposits may be applied by the owner to the payment of rent and the amount of damages which the owner has suffered by reason of the resident's noncompliance with the rental agreement. . . . In the event actual cause exists for retaining any portion of the deposit, the owner shall provide the resident with an itemized written list of the deductions from the deposit and the balance of the deposit, if any, within thirty days of the date of termination of the rental agreement or resident departure, whichever is later. The owner is deemed to have complied with this section by mailing the statement and any payment required to the last known address of the resident. . . .
>
>       D.     If the owner fails to provide the resident with a written statement of deductions from the deposit and the balance shown by the statement to be due, within thirty days of the termination of the tenancy, the owner:
>
>              (1)     shall forfeit the right to withhold any portion of the deposit;

5

> > (2) shall forfeit the right to assert any counterclaim in any action brought to recover that deposit;
>
> > (3) shall be liable to the resident for court costs and reasonable attorney[] fees; and
>
> > (4) shall forfeit the right to assert an independent action against the resident for damages to the rental property.

Section 47-8-18(C) unambiguously requires a landlord to provide an itemized list of the deductions from a tenant's deposit, and the remaining balance of such deposit, within thirty days of "termination of the residency." Section 47-8-18(D) then provides a tenant relief if a landlord fails to comply with these terms. In other words, Section 47-8-18(D), by its own clear and unambiguous language, is only triggered by a landlord's failure to comply with Section 47-8-18(C). Tenants' primary argument that Landlord was required to identify *all* damages to the property within thirty days of lease termination, and that failure to do so forfeited Landlord's rights to assert any counterclaim in the future under Section 47-8-18(D)(2), is not reflected in the plain language of the statute. *See State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("The Legislature knows how to include language in a statute if it so desires." (alteration, internal quotation marks, and citation omitted)).

**{8}** Tenants present various arguments that such a reading of the statute nullifies Section 47-8-18(C)'s thirty-day deadline. However, as we have stated before, "the purpose of Section 47-8-18 is to prevent the unexplained retention *of security deposits* to pay for alleged damages to the property." *Bruce v. Attaway*, 1996-

6

NMSC-030, ¶ 9, 121 N.M. 755, 918 P.2d 341 (emphasis added). As we explained in *Attaway*, a case on which Tenants rely in their briefing, the thirty-day time limit in Section 47-8-18(C) prevents a landlord, who has sole control over the premises after a tenant departs, from making "excessive improvements at the tenant's expense," i.e., using the tenant's damage deposit money to pay for damages not caused by tenants or other property improvements unrelated to the tenancy. *Attaway*, 1996-NMSC-030, ¶ 9. Tenants contend that the district court ignored *Attaway* in its ruling, but nothing in that case stands for the proposition that Section 47-8-18(C), (D) requires a landlord to identify *all* damages to the property, including undiscovered latent defects, within thirty days or the landlord otherwise forfeits their right to make a future claim for such damages. *See Attaway*, 1996-NMSC-030, ¶ 9 (stating "that failure to comply with Section 47-8-18(C) results in forfeiture of any right to withhold any portion of the deposit or to file suit *for the alleged damages* to the property" (internal quotation marks and citation omitted)).

{9}   Tenants further rely on another case, *Garcia v. Thong*, 1995-NMSC-030, 119 N.M. 704, 895 P.2d 226, to suggest that a landlord must identify *all* damages to a property within thirty days. *Garcia*, however, stands for substantially the same proposition as *Attaway* and does not support Tenants' argument. *See id.* ¶ 8 ("We hold therefore that *since [the landlord] failed to comply* with Section 47-8-18(C), she forfeited her right to withhold any portion of the deposit or to file suit for the

alleged damages as provided by Section 47-8-18(D)." (emphasis added)); *see also Attaway*, 1996-NMSC-030, ¶ 9 (expressly embracing and relying on *Garcia*). As stated above, the meaning of Section 47-8-18(C), (D) is clear: a landlord must identify and itemize all deductions from a tenant's damage deposit and send the remaining balance, if any, to the tenant within thirty days. *Only if* a landlord fails to comply with these requirements do they forfeit "the right to assert any counterclaim in any action brought to recover the deposit." *See* § 47-8-18(D)(2).

{10}    Here, Landlord sent Tenants an itemized list of deductions from their damage deposit and a check for the remaining balance, $1,776.38, on July 9, 2022, well within Section 47-8-18(C)'s thirty-day time limit. As such, Landlord complied with the statute and was not prohibited from advancing a counterclaim for further damages she had not previously identified. Tenants offer us no authority, and we can find none, that otherwise prohibits Landlord from filing a claim for damages to her property within the applicable statute of limitations. *See* NMSA 1978, § 37-1-4 (1880) (providing a limitation period of four years for claims alleging "injuries to property").

{11}    Tenants argue that the "stop payment" Landlord issued on her refund check, or Landlord's final admonishment in the accounting she sent them, which stated that "[b]y cashing [the] check . . . you acknowledge all monies due have been satisfied," acted as unlawful conditions on the refund and that it, therefore, does not satisfy the

requirements of Section 47-8-18(C). We find this argument similarly contradicted by the statute's text and, therefore, decline to accept it. Section 47-8-18(C) expressly states that a landlord is "deemed to have complied with this section by mailing the statement and any payment required to the last known address of the resident." Landlord mailed her accounting of the relevant deductions and a check for the remainder of Tenants' deposit as required by the statute. The Legislature, by including the above language, seems to have gone out of its way to specifically identify what constitutes compliance with the section, and Tenants have again failed to provide us with any authority supporting their argument. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). For the above reasons, we conclude that Landlord fully and completely complied with Section 47-8-18(C), (D) and, therefore, was not prohibited from filing the instant cross-claim for damages to her property.

{12}     Tenants advance several other arguments in this appeal that all essentially turn on their suggested reading of Section 47-8-18(C), (D): that it requires landlords to identify *all* damages to a property within thirty-days of termination of residency. As we determine the plain language of the statute addresses this issue, we need not address these arguments.

## II. Prevailing Party

{13} Tenants have filed a motion with this Court pursuant to Rule 12-207 NMRA seeking modification of the amount of the supersedeas bond entered against them in which the district court included attorney fees and costs related to the proceedings in district court. The current amount of the bond, including Landlord's attorney fees and costs for litigation in both district and magistrate courts, is $39,399.83. Tenants contend that the district court erred in determining Landlord, rather than Tenants, was the prevailing party under Section 47-8-48. As a result, Landlord is not entitled to an award of attorney fees and court costs, and inclusion of these amounts in the bond is improper. We disagree and deny Tenants' second application for order to modify the supersedeas bond.

{14} A district court's decision regarding the amount and application of a supersedeas bond "shall be set aside only if it . . . (1) is arbitrary, capricious or reflects an abuse of discretion; (2) is not supported by substantial evidence; or (3) is otherwise not in accordance with law." Rule 12-207(D). While we have previously applied de novo review to the meaning of "prevailing party" in Section 47-8-48, *see Hedicke v. Gunville*, 2003-NMCA-032, ¶¶ 25-26, 133 N.M. 335, 62 P.3d 1217, a district court's decision regarding who the prevailing party is, and thus who is entitled to attorney fees, is reviewed for abuse of discretion. *See Fort Knox Self Storage, Inc. v. W. Technologies., Inc.*, 2006-NMCA-096, ¶ 35, 140 N.M. 233, 142

P.3d 1 (concluding that "the trial court did not abuse its discretion in determining [the appellee] was the prevailing party"). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted).

{15} The prevailing party is "the party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention." *Hedicke*, 2003-NMCA-032, ¶ 26 (alteration, internal quotation marks, and citation omitted). Tenants claim, in various ways, that they were the prevailing party in this case because they were awarded "$350.93, or 51[ percent of] the amount requested in their [c]omplaint of $672.92." This argument mischaracterizes the record before us and ignores the fact that Tenants' "award" is actually a *refund* of a portion of their damage deposit—a portion significantly smaller than Tenants sought in their lawsuit. Tenants originally disputed $672.92 of the $832.62 deducted from their damage deposit, which, if they were successful, would have resulted in a return of $2,440.30 out of their $2,600 deposit. Instead, the district court found that "not only was the $[672.92] properly withheld by . . . [L]andlord, but . . . [L]andlord was entitled to an additional $[1,652.08]."

11

**{16}** Put simply, Tenants did not prevail in obtaining 51 percent of the amount they sought. Nor were they successful in proving any other part of their claims. Tenants sought the return of almost their entire damage deposit, less $159.70, but instead were found liable for over $2,300 in damages to Landlord's property. Tenants argue that Landlord was only awarded "21 [percent] of [her] claim" because she initially claimed that Tenants were responsible for over $10,000 in damage to her property. However, given the fact that Tenants had no success at all in their claim disputing $672.92 worth of damages, we cannot conclude that the district court's determination that Landlord was the prevailing party was an abuse of discretion. Landlord prevailed on the "main issue" in her cross-claim, even if "not necessarily to the extent of [her] original contention," and the district court, therefore, properly considered her to be the prevailing party. *See Hedicke*, 2003-NMCA-032, ¶ 26 (alteration, internal quotation marks, and citation omitted). Thus, we deny Tenants' application to modify the supersedeas bond at issue.

**CONCLUSION**

**{17}** For the reasons set forth, we affirm.

**{18}** **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

12

**WE CONCUR:**

_____
**KRISTINA BOGARDUS, Judge**

_____
**JACQUELINE R. MEDINA, Judge**